**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

DAVID SHAFFER,           )
                             )
           Plaintiff,       )
           v.              )   Civil Action
                             )   No. 09-4210-CV-C-JCE-SSA
MICHAEL J. ASTRUE,    )
COMMISSIONER OF     )
SOCIAL SECURITY,      )
              Defendant.    )

**<u>ORDER</u>**

Before the Court are Plaintiff's brief in support of his claim and Defendant's brief in support

of the administrative decision. The case involves the appeal of the final decision of the Secretary

denying plaintiff's application for disability insurance benefits under Title II of the Act, 42 U.S.C.

§401 <u>et</u> <u>seq.</u> Pursuant to 42 U.S.C.§ 405(g), this Court may review the final decision of the

Secretary. For the reasons stated herein, the decision of the Secretary will be affirmed.

<u>Standard of Review</u>

Judicial review of disability determination is limited to whether there is substantial

evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); <u>e.g.,</u>

<u>Rappoport v. Sullivan,</u> 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such

evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v.</u>

<u>Perales,</u> 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. V. NLRB,</u> 305 U.S. 197,

229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one

position represents the Agency's findings, the Court must affirm the decision. <u>Robinson v.</u>

<u>Sullivan,</u> 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1).  Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990).  In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment.  Id.  A disabling impairment is one which precludes engaging "in any substantial gainful activity [for at least twelve months] by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  A finding of "not disabled" will be made if a claimant does not "have any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities. . . ." 20 C.F.R. § 404.1520.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled.  The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions.  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

When rejecting a claimant's subjective complaints, the ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole.  Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

<u>Discussion</u>

Plaintiff was 49 years old at the time of the hearing before the ALJ.    He alleges that he is unable to work because of back and knee problems and diabetes.  His past relevant work was as a graphic artist.

At the hearing before the ALJ, plaintiff testified that he is 6 feet tall and weighs about 300 pounds.  He stated that he mostly has problems with his back, his knees, diabetes, and some memory problems.  He had back surgery when he was young. About four or five years before the hearing, his back pain started getting worse.  He has pain that runs down his legs, into his feet.  Most of it is on his right side.  He also has numbness in his feet.  It is an intense aching pain.  He has taken Percocet and other medications in the past, and currently was taking Vicodin.  He has been treated by a doctor for as long as he can remember.  He has pain in his knees whenever he does a lot of walking and twisting.  Plaintiff testified that he has diabetes, but does not take medication for it.  Diabetes would not keep him from working.  He uses a cane about 75% of the time for stability.  He trips a lot because of his feet, and he can't stand for an extended period of time.  He thinks he could stand without a cane for a minute or two, and could stand for five to ten minutes with the cane.  He can sit in a padded chair about one-half hour, and then he has to stand up and move around for a couple of minutes.  He does not have trouble reaching with his hands, but does have trouble lifting, lifting overhead, bending down, kneeling, and getting back up.  He can't take a bath because it's too hard to get in and out of the tub, and has to take a quick shower because he can't stand up for long.  He lives alone, and prepares simple meals.  He also does the dishes with breaks to sit down for a while, and vacuums when he can.  He can walk about 50 yards without having to rest.  A friend drove him to the hearing, and after the 45-minute drive, he was pretty tight.  He had to move around a lot in the car on the trip to the hearing.

Plaintiff testified that he was working about three hours a day delivering newspapers at the time of hearing.  His job involves collecting the papers, loading them into his vehicle, driving, and  putting them into the newspaper delivery tubes.  He has help with the heavier papers on Sunday.  He is in a lot of pain after he has completed his route, and takes pain pills, which he cannot take while he is driving.  He is ready to go to bed after he gets the job done.  He has to do this job in order to get by because he has no other source of income.  In the past, he was a commercial artist.  He cannot perform that job anymore because of medication problems, mainly, which caused him to make mistakes.  He cannot work a full eight hours without taking medication.  His last job was working for a printing company on yearbooks, doing the commercial art, but he was taken off that job because of mistakes.  He was then put in the plate room, making plates for presses, but he could not do that because the lifting was too much and he could not be on his feet for very long.  He then worked on the xerox machines for a year, but the stacks of paper were too heavy.  He informed his employer that he would have to work on the computer if they called him back the next year, but they wouldn't do it.  It was a seasonal job, and he just couldn't go back to doing what he had been.

Plaintiff testified that he has some heart problems, but hasn't had any incidents recently.  He was told by his heart physician to slow down, as he has about 50% blockage.  Plaintiff also suffers from sleep apnea, so he doesn't get enough sleep and has a tendency to nod off.  He has tried to be on the sleep apnea machine at night, but he can't do it because it makes him feel suffocated.  He has some memory problems with short-term memory, which affects him a lot.  He stated that he tries to get along with other people, but had some problems with co-workers or bosses.  One of the medications he takes is to keep him from getting irritable, but things do irritate him, and he gets upset easily.

Regarding his other daily activities, plaintiff testified that he does grocery shopping, but only shops for enough food for two or three days, and he does small loads of laundry, so he doesn't have heavy piles of clothes to lift. He does use a computer a little at home. He likes doing photography, and used to do woodworking, but it's too much for him now. He can no longer go fishing like he used to.

When questioned by the ALJ about how the he performed his job as a commercial artist, plaintiff testified that he sat for eight hours a day; when he was making plates and working on the xerox machine, he spent most of the day sitting. He had to get up and down during the day to get things done. He testified that he did collect unemployment compensation for a year after his last full-time job.

The ALJ found that plaintiff had not engaged in substantial gainful activity since July 2, 2007, the alleged onset date. He concluded that plaintiff was not fully credible. It was his finding that plaintiff has severe impairments of "obesity, a spinal disorder, diabetes, coronary artery disease, and sleep apnea. . . ." [Tr. 11]. He concluded that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. It was his finding that plaintiff could perform his past relevant work as a graphic artist because the job did not require the performance of work-related activities precluded by plaintiff's Residual Functional Capacity ["RFC"] to perform sedentary work as defined in the regulations. Therefore, the ALJ found that plaintiff was not under a disability as defined by the Act.

The ALJ also found that plaintiff's credibility was damaged by the fact that he left his last job voluntarily, and was not discharged for not being able to perform that job. He noted that plaintiff collected  unemployment benefits for a year, which suggests that he held himself out as being able to work. Additionally, he found that plaintiff's work delivering newspapers

contradicted his testimony regarding how little time he could spend sitting, and that even though he no longer worked that job on a full-time basis, there is nothing in the record to suggest a medical reason for him having cut back on his hours.

Plaintiff contends that the ALJ erred in finding that he had the RFC to perform sedentary work; that he erred in finding that plaintiff can perform his past relevant work as a graphic art designer; and that he erred in not considering plaintiff's good work record. Plaintiff specifically asserts that the ALJ formulated the RFC without considering all the evidence, including the medical evidence. Regarding his ability to perform his past relevant work, plaintiff contends that the ALJ should have considered his impairments in combination.

A review of the medical records indicates that plaintiff had had a previous laminectomy at L-5, and had degenerative changes in his back with disc protrusion, as indicated through MRIs in 2004 and 2006. The record establishes that he has complained of back pain and been prescribed narcotic medications since at least 2004. The consultative physician diagnosed back pain, with reduced range of movement and weakness in the lower extremities. He has also been treated for heart problems, gastrointestinal problems, and a sleep disorder.

Although the RFC finding is a part of the medical portion of a disability adjudication, an ALJ has the duty to formulate the RFC based on all the relevant, credible evidence of record, including testimony, and not rely just on medical opinion evidence. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations). The ALJ is neither required nor permitted to formulate plaintiff's residual functional capacity based solely on a single medical opinion, but instead is bound to make that determination based on the record as a whole. Id. at

863.

The ALJ found that plaintiff suffered from obesity, a spinal disorder, diabetes, coronary artery disease, and sleep apnea, which were severe impairments, and considered these in his RFC finding. He reviewed the medical records and found that plaintiff has degenerative changes with disc protrusion at L5-S1 of the spine, with no sign of nerve impingement, in an MRI from 2006. The ALJ noted that this indicated slight improvement over the multiple levels of disc protrusion observed in the 2004 MRI. The ALJ found that the objective medical evidence failed to corroborate plaintiff's allegations of disabling symptoms. He reviewed plaintiff's allegation that he cannot sit for more than 30 minutes in conjunction with the fact that he has been working delivering newspapers for the past couple of years when he alleged that he was totally disabled. That job has required him to sit for 3-6 hours while driving around and delivering newspapers. He found that even though plaintiff is now spending less time delivering newspapers, there was no medical evidence to support that change, and his ability to work for 3 to 6 hours "supports the finding that he is capable of returning to his prior job as a graphic art designer." [Tr. 13]. Together with his having received unemployment compensation, the ALJ found that because plaintiff "lacks credibility it is appropriate in this case to place more weight on the objective medical evidence and less weight on [his] subjective description of his pain and his subjective description of the limitations caused by his impairments." [Id.]. In making his RFC assessment, the ALJ determined that even though plaintiff alleged that he was very limited in his ability to sit or stand, it was his opinion that his statements concerning the intensity, persistence and limiting effects of these symptoms were not consistent with the record as a whole.

A careful review of the record indicates that the ALJ properly considered all of plaintiff's severe impairments in assessing the RFC, taking into consideration the credible, medically

supported evidence in the record.  The Court finds that there is substantial evidence in the record as a whole to conclude that the ALJ relied on all the evidence, both medical and non-medical, to support the RFC assessment.

Having found that plaintiff had the RFC to perform sedentary work, the ALJ concluded that plaintiff could perform his past relevant work, as it is actually performed.  He determined that plaintiff was able to sit for eight hours and write, type or handle small objects for eight hours.   In reaching this decision, the ALJ noted that plaintiff  "has been able to return to work and do a wide range of activities since his spinal surgery.  That fact along with the fact that his spinal condition has not become significantly worse since his alleged onset date of disability suggests that he has the capability of returning to his past work as a graphic art designer." [Tr. 14].  He further found that "[i]n addition to the fact that the claimant has been able to work delivering newspapers since his alleged onset date of disability he has been able to do a wide range of other activities which support the finding that he is capable of returning to his past relevant work as a graphic art designer. " [Id.]

When finding that plaintiff could perform his past relevant work as a graphic artist, the ALJ included the limitations he found credible.  In this case, plaintiff's testimony that he cannot sit more than 30 minutes is simply inconsistent with the fact that he has worked at a job that required at least three hours of sitting during the period that he alleges he was totally disabled.  After careful review, the Court finds that, based on plaintiff's own testimony and the record as a whole, there is substantial evidence in the record to support the ALJ's finding that plaintiff could perform his past relevant work as a graphic artist.

Based on the record before it, the Court finds that the ALJ's decision is supported by substantial evidence in the record.  Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir.  2006).

Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date:     3/25/11